**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Lisa Freemyer, an individual, | ) | No. CV-10-1506-PHX-GMS |
| | ) | |
| Plaintiff, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION,** |
| vs. | ) | **FINDINGS OF FACT,** |
| | ) | **AND CONCLUSIONS OF LAW** |
| | ) | |
| Kyrene Village II, LLC, a Delaware | ) | |
| limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) by the assigned District Judge, the Hon. G. Murray Snow, on August 30, 2010 to conduct a Rule 55(b)(2), Fed.R.Civ.P., post-default damages hearing. (Doc. 9)  This Magistrate Judge will recommend that default judgment be entered in favor of Plaintiff Lisa Freemyer ("Plaintiff") against Defendant Kyrene Village II, LLC, a Delaware limited liability company, for the reasons set forth in this Report and Recommendation.

**I. Background**

This is a disability discrimination case brought by a disabled plaintiff, suffering from multiple sclerosis and using a wheelchair for mobility, who encountered discriminatory barriers when she shopped at a Chandler, Arizona shopping center. Plaintiff brings this action pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the Arizonans with Disabilities Act ("AzDA"), Arizona Revised Statutes ("A.R.S.") §§ 41-1492 to 41-1492.12. The District Court has subject-matter

1  jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and supplemental jurisdiction over
2  Plaintiff's state law claim pursuant 28 U.S.C. § 1367.

### A. Allegations

4          The Complaint, filed on July 16, 2010, alleges that Defendant Kyrene Village
5  II, LLC ("Kyrene Village") owns, operates, leases or leases to others a shopping center,
6  known as Kyrene Village, located at the southwest corner of Chandler Boulevard and Kyrene
7  Road in Chandler, Arizona. (Doc. 1, ¶ 4 at 2)  Plaintiff contends that Kyrene Village
8  shopping center is a "place of public accommodation" within the meaning of the ADA and
9  AzDA. (*Id.*, ¶ 5) The Complaint alleges that Plaintiff "suffers from multiple sclerosis and
10 requires the use of a wheelchair for mobility" and "is a customer at Defendant's [shopping
11 center] and has visited [it] regularly . . . to enjoy the goods and services at the shopping
12 center, as Defendant offers them to non-disabled members of the public." (*Id.*, ¶¶ 7-8)
13 Plaintiff contends she "has suffered an injury under the ADA and AzDA because of her
14 awareness of discriminatory conditions on the property and [is] deterred from visiting or
15 patronizing the [shopping center] . . . as a direct result of Defendant's failure to remove
16 discriminatory architectural features on the property." (*Id.*, ¶¶ 10, 12 at 3)  The Complaint
17 seeks, *inter alia*, injunctive relief that Defendant remove existing barriers to access and that
18 Defendant's shopping center be made accessible to, and usable by, individuals with
19 disabilities as required by the ADA and AzDA; an award of attorney's fees, costs and
20 litigation expenses pursuant to 42 U.S.C. 12205; and non-liquidated, compensatory damages
21 under the AzDA. (*Id.* at 6)

### B. Procedural requirements

23         Plaintiff has satisfied the procedural requirements for a default judgment
24 pursuant to Fed.R.Civ.P. 55(a).  First, Defendant Kyrene Village's Arizona statutory agent
25 was properly served with process on July 26, 2010. (Doc. 5)  Second, on August 25, 2010,
26 the Clerk of Court properly entered default against Kyrene Village due to its failure to timely
27 answer or otherwise respond to Plaintiff's Complaint. (Doc. 8) Third, Defendant Kyrene
28 Village is not an infant, an incompetent person, in military service or otherwise exempted

1   under the Soldiers' and Sailors' Civil Relief Act of 1940. See, Fed.R.Civ.P. 55(b)(2); 50

2   U.S.C.App. § 501, *et seq*.  Fourth, Kyrene Village's statutory agent, Bruce I. Shapiro,

3   Arizona Partners Retail Investment Group, LLC, located in Scottsdale, Arizona, was properly

4   served with Plaintiff's application for default judgment, entitled Request for Post-Default

5   Hearing, as required by Fed.R.Civ.P. 55(b)(2). (Doc. 7)

6           After notice, a default damages hearing was conducted in open court on

7   December 17, 2010. (Doc. 20)  The only witness testifying was Paul Farber, CAI/PE, of

8   Farber Consulting, LLC, a Phoenix-based real estate compliance consulting firm.  Mr. Farber

9   represents himself as an accessibility inspector and plans examiner, certified by the

10  International Code Council, and an independent ADA consultant since 2005. (Doc. 18-1,

11  Exhibit ("Exh") A at 3) He claims to have "consulted and analyzed hundreds of properties

12  in the Phoenix area for issues involving architectural accessibility for people with disabilities,

13  and the methods and cost of barrier removal [and has] been recognized by the United States

14  District Court, District of Arizona as an expert in the areas of ADA barrier identification,

15  measurement, and the costs and methods of architectural barrier removal." (*Id*.)

16          The Court concludes that Mr. Farber qualifies as an expert witness by his

17  knowledge, experience, and education to offer opinion testimony regarding the standards of

18  accessibility set forth in the ADA Accessibility Guidelines ("ADAAG ") which is the

19  product of reliable principles and methods properly applied to the facts and issues in this

20  case. Rule 702, Fed.R. of Evid.  Moreover, the Court concludes that his technical knowledge

21  in this specialized area will assist the Court to understand the evidence and determine the

22  facts and legal issues in this action. *Id.*  On January 5, 2011, the Court visited  Kyrene

23  Village to view the ten (10) architectural features that are the basis of the Complaint and

24  independently corroborate Mr. Farber's opinion testimony.

25  **II. Legal Standard**

26          Following entry of default, Rule 55(b)(2), Fed.R.Civ.P., permits a district court

27  to enter final judgment in a case. Entry of default judgment, however, is not a matter of right.

28  *Warner Bros. Entm't Inc. v. Caridi*, 346 F.Supp.2d 1068, 1071 (C.D. Cal. 2004).  No party

in default is entitled to notice under Rule 55 unless he has "appeared" in the action. Fed.R.Civ.P. 55(b)(2). If a party in default has "appeared," the party must be served with written notice of the application for judgment at least three days prior to the hearing. *Id.* "Normally, an appearance in an action involves some presentation or submission to the court. But because judgments by default are disfavored, a court usually will try to find that there has been an appearance by defendant." *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988). It is unclear whether the September 24, 2010 non-lawyer Motion to Set Aside Default Judgment (sic), doc. 11, filed by "Trigild Inc., Receiver, William J. Hoffman, In Pro Per as Agent for Receiver" constitutes a valid appearance for Kyrene Village. Nevertheless, notice of Plaintiff's application for default judgment, entitled Request for Post-Default Hearing, was provided to Kyrene Village's statutory agent, Bruce I. Shapiro, Arizona Partners Retail Investment Group, LLC. (Doc. 7 at 2)  Notice of the Court's November 18, 2010 order, setting the December 17, 2010 default damages hearing, was also mailed on the same day by the Clerk of Court to Trigild Inc., Receiver. See, Clerk's November 18, 2010 docket entry.

Entry of default judgment is entirely within the district court's sound discretion and may be refused if no justifiable claim has been alleged or a default judgment is inappropriate for other reasons. *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Well-pled factual allegations in a complaint are taken as true, except for those allegations relating to damages. *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

In determining damages or other requested relief, a district court may rely on the declarations submitted by the plaintiff or conduct a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). "A plaintiff's burden in 'proving up' damages is relatively lenient." *Philip Morris USA,* 219 F.R.D. at 498. "[F]undamental fairness, required by due process of law, limits the scope of relief[,]" *id*., which is, undoubtedly, why Rule 54(c), Fed.R.Civ.P.,

proscribes that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Rule 54(c), Fed.R.Civ.P.  "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA*, 219 F.R.D. at 498 (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc*., 189 F.R.D. 431, 432 (C.D.Cal. 1999)).

The Ninth Circuit has enumerated seven factors for a district court to consider in determining whether to grant a default judgment: (1) the merits of the plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986); *Truong Giany Corp. v. Twinstar Tea Corp*., 2007 WL 1545173 (N.D. Cal. 2007). After considering and balancing all these factors, the Court finds that they weigh strongly in favor of entering the default judgment recommended herein.

**III. Standing**

"Standing is a jurisdictional requirement, and a party invoking federal jurisdiction has the burden of establishing it." *Harris v. Stonecrest Care Auto Center, LLC*, 472 F.Supp.2d 1208, 1214 (S.D.Cal. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)). To establish standing, a plaintiff bears the burden of showing: (1) injury-in-fact, or the invasion of a legally protected interest, that is both (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable decision will regress the wrong. *Lujan*, 504 U.S. at 560.

"In order to establish standing under the ADA for injunctive relief, '[a

plaintiff] must demonstrate that [she has] suffered or [is] threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [she] will again be wronged in a similar way.'" *Mantic Ashanti's Cause v. Darwish Plaza*, 2006 WL 1360969, * 3 (S.D.Cal. 2006) (quoting *Bird v. Lewis & Clark College*, 303 F.3d 1015, 1019 (9th Cir. 2002) (quotations and citations omitted). A plaintiff can establish injury-in-fact by showing that she encountered barriers at a place of public accommodation and that she intends to return to the public accommodation if it is made accessible. *Id.* (citing *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Molski v. Price*, 224 F.R.D. 479 482-83 (C.D.Cal. 2004) (plaintiff established standing to seek injunctive relief under the ADA against gas station which he visited and whose restroom he found not accessible to wheelchair users, based on plaintiff's testimony that he intended to return to service station to check out its accessibility and to use the restroom facilities) (citing *Pickern v. Holiday Quality Foods Incorporated*, 293 F.3d 1133, 1138 (9th Cir. 2002) and *Steger v. Franco, Inc.*, 228 F.3d 889, 892-94 (8th Cir. 2000), *cert. denied*, 537 U.S. 1030 (2002)).

**IV. Americans with Disabilities Act**

      **A. Liability**

      "Congress enacted the ADA 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities . . . .'" *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 669 (9th Cir. 2010) (quoting 42 U.S.C. § 12101(b)(2)). Title III of the ADA prohibits discrimination by public accommodations, prescribing generally that

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

*Id.* Disability discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv). Under the ADA, the terms "readily achievable" mean "easily accomplishable and able to be

carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The ADA also sets forth a number of factors for courts to consider when making a "readily achievable" determination:

> (A) the nature and cost of the action needed under this chapter;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Id*. "Whether a specific change is readily achievable 'is a fact intensive inquiry.'" *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150, 1168 (S.D.Cal. 2006) (citation omitted).

Title III gives the Department of Justice authority to develop regulations implementing the requirements of the ADA. 42 U.S.C. § 12186(b). The ADA Accessibility Guidelines are codified at 28 C.F.R. Pt. 36, Appendix A. *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150, 1159 (S.D.Cal. 2006). Barrier removal must comply with the applicable requirements for alterations. 28 C.F.R. § 36.304(d). After January 26, 1992, any alteration to a place of public accommodation "shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1088 n. 27 (D.Haw. 2000) (quoting 28 C.F.R. § 36.402(a)(1)). "To the 'maximum extent feasible' only applies to 'the occasional case where the nature of an existing facility makes it virtually impossible to comply' with accessibility standards. *Id*. (quoting 28 C.F.R. § 36.402(c)). "In these circumstances, the alteration shall provide the 'maximum physical accessibility feasible.'" *Id*.

"To prevail on a Title III discrimination claim, a plaintiff must show that (1)

1    [s]he is disabled within the meaning of the ADA; (2) the defendant is a private entity that

2    owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied

3    public accommodations by the defendant because of [her] disability." *Harkins Amusement*,

4    603 F.3d at 670 (citing *Molski v. M.J. Cable*, Inc., 481 F.3d 724, 730 (9th Cir. 2007)). "[T]o

5    succeed on a ADA claim of discrimination on account of one's disability due to an

6    architectural barrier, the plaintiff must also prove that: (1) the existing facility at the

7    defendant's place of business presents an architectural barrier prohibited under the ADA, and

8    (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96

9    F.Supp.2d 1065, 1085 (D.Haw. 2000) (citations omitted).

10           As Plaintiff points out, Title III of the ADA does not specify which party bears

11   the burden of proving that removal of an architectural barrier is readily achievable. (Doc. 19

12   at 2)   Although "[t]he Ninth Circuit has yet to rule on whether the plaintiff or defendant bears

13   the burden of proof in showing that removal of an architectural barrier is readily achievable,"

14   the Ninth Circuit and several district courts within the Ninth Circuit have applied the

15   burden-shifting framework set forth in *Colorado Cross Disability Coalition v. Hermanson*

16   *Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001). *Vesecky v. Garick, Inc.*, 2008 WL 4446714, at

17   * 2-3 (D.Ariz. 2008) (citing, among others, *Doran v. 7-Eleven, Inc.*, 506 F.3d 1191, 1202

18   (9th Cir. 2007). In *Colorado Cross*, the Tenth Circuit stated that the "[p]laintiff bears the

19   initial burden of production to present evidence that a suggested method of barrier removal

20   is readily achievable" and that if plaintiff meets that burden, the burden shifts to the

21   defendant, who "bears the ultimate burden of persuasion regarding its affirmative defense

22   that a suggested method of barrier removal is not readily achievable." *Colorado Cross*, 264

23   F.3d at 1006. In 2008, however, the Ninth Circuit expressly rejected the burden shifting

24   approach allocated in *Colorado Cross* where a defendant sought a historical designation on

25   a place of a public accommodation. In *Molski v. Foley Estates Vineyard and Winery, LLC*,

26   531 F.3d 1043, 1048 (9th Cir. 2008), the court held that a defendant "is in a better position

27   to introduce, as part of an affirmative defense, detailed evidence and expert testimony

28   concerning whether the historic significance of a structure would be threatened or destroyed

1    by the proposed barrier removal plan." 531 F.3d at 1048.

2    　　　　Because there is no suggestion in the record that the Kyrene Village shopping

3    center is a historical building, this Magistrate Judge will follow the lead of former District

4    Judge Mary H. Murguia[1] that

5    　　　　[u]ntil the Ninth Circuit provides additional and specific instruction to the

6    lower courts[,] this Court will follow the overwhelming majority of federal
     courts that apply the burden-shifting framework of *Colo. Cross*, specifically
     in cases where a historic building is not at issue. The Court, therefore, finds

7    that [plaintiff] has the initial burden to produce evidence that removal of the
     barriers on [defendant's] property are readily achievable, or "easily

8    accomplishable and able to be carried out without much difficulty or expense."
     42 U.S.C. § 12181(9). If [plaintiff] carries this burden, it will shift to

9    [defendant] who will bear the ultimate burden of persuasion as an affirmative
     defense.

10

11   *Vesecky*, 2008 WL 4446714 at * 3.

12   　　　　　　　　**B. Authorized Relief**

13   　　　　Under 42 U.S.C. § 12188(b)(2)(B), money damages are not available in an

14   ADA case to private litigants; remedies are limited to injunctive relief, attorney's fees and

15   costs. 42 U.S.C. § 12188(a)(1) (providing that remedies under Title III are the same as those

16   outlined in 42 U.S.C. § 2000a-3(A), which do not permit recovery of monetary damages);

17   *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). "In addition to attorneys' fees, the ADA

18   authorizes 'litigation expenses and costs.'" *Chapman v. Pier 1 Imports, Inc*., 2007 WL

19   2462084, * 5 (E.D.Cal. 2007) (citing 42 U.S.C. § 12205). "Expert witness fees are to be

20   included in the term litigation expenses in ADA cases." *Id.* (citation omitted); also see, *Lovell*

21   *v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002) ("[B]ecause the term 'litigation

22   expenses' normally encompasses expert witness fees, we hold that the statutory provision

23   provides direct authority for the award of expert witness fees. Second, because Congress

24   gave the Attorney General the authority to promulgate regulations under the ADA, 42 U.S.C.

25   § 12134(a), those regulations "must be given legislative and hence controlling weight unless

26

27   　　　　[1] On December 22, 2010, the U.S. Senate confirmed Judge Murgia's appointment to

28   the Ninth Circuit Court of Appeals.

1  they are arbitrary, capricious, or clearly contrary to the statute.'").

2  **V. Arizonans with Disabilities Act**

3    **A. Liability**

4     The Arizonans with Disabilities Act ("AzDA"), A.R.S. §§ 41- 1492 to 41-

5  1492.12 "is intended to be consistent with the ADA." *Castle v. Eurofresh, Inc*., 2010 WL

6  3244900, * 6 (D.Ariz. 2010). The AzDA prohibits discrimination by public accommodation

7  and commercial facilities as follows:

8     No individual may be discriminated against on the basis of disability in the full
      and equal enjoyment of the goods, services, facilities, privileges, advantages
9     or accommodations of any place of public accommodation by any person who
      owns, leases, leases to others or operates a place of public accommodation.
10

11  A.R.S. § 41-1492.02(A).  For the purposes of subsection A of this section, "discriminated

12  against" means: "[a] failure to remove architectural barriers . . . that are structural in nature

13  in existing facilities . . . if the removal is readily achievable." A.R.S. § 41-1492.02(G)(4).

14  Under Arizona law, the owner of the "entity" has the burden of proving "that the removal of

15  a barrier under paragraph 4 of this subsection is not readily achievable . . . ." A.R.S. §

16  41-1492.02(G)(5).

17     Under Arizona law and consistent with the ADA, a  public accommodation is

18  defined to include, among other things, a shopping center. A.R.S. § 41-1492(11)(e); *Nolan*

19  *v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 167 P.3d 1277, 1280 (Az.Ct.App. 2007)

20  A disability within the meaning of the statute is a "physical or mental impairment that

21  substantially limits one or more of the major life activities of such individual." A.R.S. §

22  41-1492(5).

23    **B. Authorized Relief**

24     The AzDA provides that if any person believes a covered person or entity has

25  engaged in prohibited conduct under the AzDA, a plaintiff "may institute a civil action for

26  preventive or mandatory relief, including an application for a permanent or temporary

27  injunction, restraining order or other order." A.R.S. § 41-1492.08(A); *Bailey-Null v.*

28  *ValueOptions*, 221 Ariz. 63, 209 P.3d 1059 (Az.Ct.App. 2009). Arizona Revised Statute §

41-1492.09 provides that "[i]n any civil action under this article the court:

> 1. May grant any equitable relief that the court considers to be appropriate, including, to the extent required by this title:
>
>> (a) Granting temporary, preliminary or permanent relief.
>>
>> (b) Providing an auxiliary aid or service, a modification of a policy, practice or procedure or an alternative method.
>>
>> (c) Making facilities readily accessible to and usable by individuals with disabilities.
>
> 2. May award such other relief as the court considers appropriate, *including monetary damages to aggrieved persons*. In this paragraph "monetary damages" and "such other relief" do not include punitive damages.

A.R.S. 41-1492.09 (emphasis added). Plaintiff has not provided, nor has this Court's independent research discovered, any Arizona case that explains the meaning of "monetary damages to aggrieved persons." Plaintiff does not contend that the AzDA creates an express or implied private cause of action for compensatory damages, like the Consumer Fraud Act. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (Ariz. 1974) ("Although the [Consumer Fraud] Act does not specifically provide for a right of action against persons violating the provisions of the article, we believe inferentially such right of action is granted by s 44-1533."). The issue, however, is irrelevant in this case because Plaintiff did not testify or present any evidence at the default damages hearing to warrant an award of monetary or compensatory damages.

**VI. Findings of Fact**

After review of Plaintiff's Complaint, doc. 1; the Default Hearing Memorandum, doc. 18; the Post-Hearing Memorandum, doc. 19; the Proposed Findings of Fact and Conclusions of Law, doc. 17; conducting an evidentiary hearing on December 17, 2010; and viewing in person the shopping center's areas of alleged non-compliance with the ADA on January 5, 2011, the Court hereby enters its findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

The Court makes the following findings of fact:

1    1. Defendant Kyrene Village II LLC is a company that owns, operates, leases

2    or leases to others a shopping center, located at the southwest corner of Chandler Boulevard

3    and Kyrene Road, in Chandler, Maricopa County, Arizona.

4    2.  The shopping center is a "public accommodation," as defined by both the

5    Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq*. and the Arizonans with

6    Disabilities Act ("AzDA"), A.R.S. § 41- 1492, *et seq*.

7    3. Kyrene Village was constructed in the 1980's.[2]

8    4. At all times relevant to this lawsuit, Plaintiff Lisa Freemyer ("Plaintiff") has

9    lived in the Phoenix metropolitan area. She has visited the shopping center regularly and

10   continues to visit the shopping center to date.

11   5. Plaintiff suffers from multiple sclerosis and requires a wheelchair for

12   mobility purposes.

13   6. Plaintiff has encountered various accessibility barriers upon visiting the

14   shopping center that have remained similar on each visit. She visited the shopping center in

15   May, 2010, and she encountered discrimination in the form of numerous architectural

16   barriers, preventing her from enjoying the services.

17   7. As a result of these barriers at Kyrene Village, Plaintiff was denied access

18   to the full and equal enjoyment of the goods, services, facilities, privileges, advantages or

19   accommodations which are available at Defendant's shopping center.

20   8. Plaintiff's expert, Paul Farber, CAI/PE, of Farber Consulting, LLC, testified

21   _____

22   [2] "The ADA imposes different requirements on existing facilities than it does on new
     construction. 'For existing facilities, the [ADA] requires the removal of architectural barriers

23   . . . where such removal is readily achievable, and permits the use of alternative methods
     where removal of architectural barriers is not readily achievable. By contrast, in new

24   construction - any facility designed and constructed for first occupancy after January 26,
     1993 - the Act censures the failure to design and construct facilities . . . that are readily

25   accessible to and usable by individuals with disabilities." *Parr*, 96 F.Supp.2d at 1085 n. 21

26   (quoting *Small v. Dellis*, 1997 WL 853515, at * 3 (D.Md. 1997) (internal citations and
     quotations omitted). Defendant Kyrene Village is covered under the ADA requirements for

27   an "existing" facility.

28

1   that he has visited the shopping center and performed a site inspection on the property. Mr.

2   Farber is a certified accessibility expert and plans examiner. He identified, and testified to,

3   ten (10) architectural barriers at the Kyrene Village shopping center that violate the ADAAG

4   guidelines.

5           9. In front of Regal Beagle (facing north), the access aisle serving the

6   "accessible" parking spaces contains a curb ramp with a running slope of 7.9%, in excess of

7   the 2.0% maximum for accessible parking spaces and access aisles. The cost to remove these

8   barriers is $1,904.00.

9           10. In front of Dollar Tree, the access aisle serving the "accessible" parking

10  spaces contains a curb ramp with a running slope of 7.1%, in excess of the 2.0% maximum

11  for accessible parking spaces and access aisles. The cost to remove these barriers is

12  $2,272.00.

13          11. In front of the former Basha's space, there are two "built-up" style curb

14  ramps that extend into the vehicular traffic lane. The cost to remove these barriers

15  is $1,140.00.

16          12. In front of Audio Express, the sidewalk curb ramp has a running slope of

17  14.0%, in excess of the 8.33% maximum. In addition, the asphalt immediately adjacent to

18  the base of the ramp has a running slope of 7.7%, in excess of the 5.0% maximum. The cost

19  to remove these barriers is $1,865.00.

20          13. In front of Kyrene Lanes, all three sidewalk curb ramps are too steep: the

21  south curb ramp has a running slope of 11.3%, in excess of the 8.33% maximum,

22  and a side flare slope of 26.3%, in excess of the 10% maximum. The center ramp

23  (immediately in front of the entrance) has a running slope of 9.1%. The north curb ramp has

24  a running slope of 10.1%. The cost to remove these barriers is $1,008.00.

25          14. The "accessible" parking spaces serving the north curb ramp in front of

26  Kyrene Lanes have running slopes in excess of the 2.0% maximum: the south space has a

27  running slope of 7.9% and the north space has a running slope of 3.6%. The cost to remove

28  this barrier is $4,812.50.

15. The sidewalk curb ramp serving Corvette Cafe and Lounge has a running slope of 11.4%, in excess of the 8.33% maximum. The cost to remove this barrier is $1,188.00.

16. The "accessible" parking space serving Corvette Cafe and Lounge has a running slope of 6.0%, in excess of the 2.0% maximum. The cost to remove this barrier is $2,750.00.

17. The sidewalk curb ramp serving Queens Bowl restaurant has a running slope of 11.0%, in excess of the 8.33% maximum. The cost to remove this barrier is $646.00.

18. The sidewalk curb ramp in front of India Gate (serving as part of the "accessible" route from Chandler Boulevard) has a running slope of 10.4%, in excess of the 8.33% maximum. The curb ramp also has a side flare slope of 15.5%, in excess of the 10.0% maximum. The cost to remove this barrier is $630.00.

19. Mr. Farber further testified that the removal of each barrier identified above is readily achievable.

20. The estimated total cost to remove the 10 barriers identified by Mr. Farber is $18,215.50.

## **CONCLUSIONS OF LAW**

1. This District Court has subject-matter jurisdiction (federal question) over this action pursuant to 28 U.S.C. §§ 1331, 1343 and supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

2. Defendant Kyrene Village II, LLC was properly served with the Summons and Complaint by service upon its Arizona statutory agent, Bruce I. Shapiro, Arizona Partners Retail Investment Group, LLC, located in Scottsdale, Arizona, on July 26, 2010 at 1:20 p.m. pursuant to Federal Rule of Civil Procedure 4(h)(1)(B).[3]  (Doc. 5)

---

[3] Federal Rule of Civil Procedure 4(h)(1)(A) and (B) provides:

1    3. Personal jurisdiction exists over Defendant Kyrene Village II, LLC, a

2  Delaware limited liability company, because it was served with process in accordance with

3  Federal Rule of Civil Procedure 4(h)(1)(B) and it has, at least, the "minimum contacts"[4] with

4  Arizona such that the exercise of jurisdiction in Arizona "does not offend traditional notions

5  of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316

6  (1945). Therefore, the Court may properly enter default judgment against Defendant Kyrene

7  Village. *King v. Russell*, 963 F.2d 1301 (9th Cir. 1992).

8    4. This Magistrate Judge has authority to recommend a non-final and

9  independent determination of fact and law that default judgment be entered against

10  Defendant Kyrene Village II, LLC, without its consent.  *Wang v. Masaitis*, 416 F.3d. 992,

11  999 (9th Cir. 2005) (holding that magistrate judge was well within her authority to issue a

12  report and recommendation on Wang's habeas petition without Wang's consent for *de novo*

13

14      (h) Serving a Corporation, Partnership, or Association. Unless federal law

15      provides otherwise or the defendant's waiver has been filed, a domestic or
       foreign corporation, or a partnership or other unincorporated association that

16      is subject to suit under a common name, must be served:

17      (1) in a judicial district of the United States:

18

19          (A) in the manner prescribed by Rule 4(e)(1) [following state law for
           service of process] for serving an individual; or

20

21          (B) by delivering a copy of the summons and of the complaint to an
           officer, a managing or general agent, or **any other agent authorized**

22          **by appointment or by law to receive service of process** and--if the
           agent is one authorized by statute and the statute so requires--by also

23          mailing a copy of each to the defendant;

24  Rule 4(h)(1)(A) and (B), FED.R.CIV.P., (emphasis added); see also, *Direct Mail Specialists,*

25  *Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th Cir. 1988).

26

27      [4] Defendant Kyrene Village "owns, leases (or leases to), or operates a place of public

28  accommodation" in Arizona.  42 U.S.C. § 12182.

review by district judge); 28 U.S.C. § 636(b)(1)(A);  LRCiv. 72.2(a)(1).

5. Plaintiff has Article III standing for her ADA and AzDA claims. Plaintiff's allegations in her Complaint that she "visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that [her] injury is actual or imminent." *Doran*, 524 F.3d at 1041(citations omitted); *Castaneda v. Burger King Corp.*, 597 F.Supp.2d 1035, 1041 (N.D.Cal. 2009). Specifically, Plaintiff alleges that

> 1) "[s]he is a customer at Defendant's property and has visited regularly, including in May, 2010, to enjoy the goods and services at the shopping center, as Defendant offers them to non-disabled members of the public[,]" doc. 1, ¶ 8 at 2;

> b) she "plans to return to the Defendant's shopping center to enjoy the goods, services, privileges, advantages or accommodations being offered to nondisabled members of the public, but is deterred from returning because of discriminatory conditions on the property[,]" *id*. ¶ 9 at 2-3; and

> c) she "has suffered an injury under the ADA and AzDA because of her awareness of discriminatory conditions on the property and her being deterred from visiting or patronizing the public accommodations." *id*. ¶ 10 at 3.

6. The shopping center, "Kyrene Village," located at the southwest corner of Chandler Boulevard and Kyrene Road, Chandler, Maricopa County, Arizona is a "public accommodation" within the meaning of the ADA.[5]

7. Defendant Kyrene Village II LLC owns, operates, leases or leases to others a public accommodation commonly known as Kyrene Village shopping center.

8. The Kyrene Village shopping center constitutes existing construction and, in places where no alterations have been made, must therefore comply with the accessibility standards set forth in the ADA's ADAAG Guidelines to the extent that barrier removal is readily achievable.

9. The Kyrene Village shopping center contains ten (10) architectural features

---

[5] A public accommodation is any one of a number of entities enumerated in the act provided that the entity's operation "affects commerce." 42 U.S.C. § 12181(7). Shopping centers are public accommodations under the ADA. 42 U.S.C. § 12181(7)(E).

1   constituting barriers to accessibility.

2        10. ADAAG 4.6.3 requires that the maximum slope for accessible parking

3   spaces and adjacent access aisles be 2.0% in all directions. Here, in front of Regal Beagle

4   (facing north), the access aisle has a running slope of 7.9%.

5        11. ADAAG 4.6.3 requires that the maximum slope for accessible parking

6   spaces and adjacent access aisles be 2.0% in all directions. Here, in front of Dollar Tree, the

7   access aisle has a running slope of 7.1%.

8        12. ADAAG 4.7.6 prohibits "built-up" style curb ramps from projecting into

9   the vehicular traffic lanes. Here, in front of the former Basha's space, two "built-up" curb

10  ramps project into the vehicular traffic lane, creating a safety hazard for manual wheelchair

11  users.

12       13. ADAAG 4.8.2 requires that the maximum running slope for all ramps be

13  8.33%. 4.7.2 requires that the maximum slope for a route immediately adjacent to a curb

14  ramp be 5.0%. Here, in front of Audio Express, the curb ramp has a running slope of 14.0%

15  and the asphalt immediately adjacent to the base of the ramp has a running slope of 7.7%.

16       14. ADAAG 4.8.2 requires that the maximum running slope for all ramps be

17  8.33%. ADAAG 4.7.5 requires that the maximum slope for curb ramp side flare be 10.0%.

18  Here, in front of Kyrene Lanes, the south curb ramp has a running slope of 11.3%, and a side

19  flare slope of 26.3%. The center ramp (immediately in front of the entrance) has a running

20  slope of 9.1%. The north curb ramp has a running slope of 10.1%.

21       15. ADAAG 4.6.3 requires that the maximum slope for accessible parking

22  spaces be 2.0% in all directions. Here, the south "accessible" parking space serving the north

23  curb ramp in front of Kyrene Lanes has a running slope of 7.9% and the north space has a

24  running slope of 3.6%.

25       16. ADAAG 4.8.2 requires that the maximum running slope for all ramps be

26  8.33%. Here, in front of Corvette Cafe, the curb ramp has a running slope of 11.4%.

27       17. ADAAG 4.6.3 requires that the maximum slope for accessible parking

28  spaces be 2.0% in all directions. Here, the "accessible" parking space serving Corvette Cafe

1   has a running slope of 6.0%.

2       18. ADAAG 4.8.2 requires that the maximum running slope for all ramps be

3   8.33%. Here, in front of Queens Bowl, the curb ramp has a running slope of 11.0%.

4       19. ADAAG 4.8.2 requires that the maximum running slope for all ramps be

5   8.33%. ADAAG 4.7.5 requires that the maximum slope for curb ramp side flares be 10.0%.

6   Here, in front of India Gate, the curb ramp has a running slope of 10.4%, and a side flare

7   slope of 15.5%.

8       20. The removal of each of these barriers is readily achievable.

9       21. Plaintiff is thus entitled to injunctive relief under the ADA and AzDA.

10       22. As to post-judgment interest, Plaintiff is entitled to post-judgment interest

11   at the federal rate pursuant to 28 U.S.C. § 1961, to be calculated by the Clerk of the Court

12   from the date of the entry of judgment.[6]

13       23. The ADA provides that, "[i]n any action or administrative proceeding

14   commenced pursuant to this Act, the court or agency, in its discretion, may allow *the*

15   *prevailing party*, other than the United States, a reasonable attorney's fee, including litigation

16   expenses, and costs . . . ." 42 U.S.C. § 12205 (emphasis added). In order to award fees and

17   costs pursuant to 42 U.S.C. § 12205, the district court must first determine whether "the party

18   seeking fees and costs is the prevailing party." *Molski v. Mandarin Touch Restaurant*, 2005

19   WL 3719631 (C.D.Cal. 2005); 42 U.S.C. § 12205. A prevailing plaintiff under a statute so

20   worded "should ordinarily recover an attorney's fee unless special circumstances would

21   render such an award unjust." *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134

22   (9th Cir. 2002)

23       24. Plaintiff requests an award for her reasonable attorney's fees pursuant to

24

25       [6] Per 28 U.S.C. § 1961(a), post-judgment interest is calculated "from the date of the

26   entry of the judgment, at a rate equal to the weekly average 1-year constant maturity

27   Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a) (footnote

28   omitted).

1    42 U.S.C. § 12205 as the prevailing party in the amount of $6,733.33.00[7] based upon

2    counsel's reasonable billing rate ($300.00 per hour) and in the exercise of, what the Local

3    Rules refer to as, counsel's "billing judgment." (Doc. 18-2, Exh B at 1-5).

4           25. Plaintiff requests an award for her costs, expert witness fees, and litigation

5    expenses of $5,901.94. (*Id.*)

6           26.  Federal law governs the award of taxable costs. *Aceves v. Allstate Ins. Co.*,

7    68 F.3d 1160, 1167 (9th Cir. 1995). Plaintiff may recover her taxable costs by strict

8    compliance with Rule 54(d)(1), Fed.R.Civ.P., and LRCiv 54.1(a).

9           Accordingly,

10          **IT IS RECOMMENDED** as follows:

11          1. that Plaintiff Lisa Freemyer's request for a default judgment against

12   Defendant Kyrene Village II, LLC, be **GRANTED**;

13          2. that Plaintiff's request for an award of attorneys' fees, costs and litigation

14   expenses pursuant to 42 U.S.C. 12205, docs. 1 at 6; 18, Exh B at 2-5, be **GRANTED**;

15          3. that default judgment is entered in favor of Plaintiff Lisa Freemyer against

16   Defendant Kyrene Village II, LLC, in the amount of  $12,634.94 with interest thereon at the

17   annual federal rate from the date of entry of the Judgment until paid in full.

18          4. that a permanent injunction is entered that Defendant Kyrene Village II LLC,

19   its successors, and/or assigns, shall modify the Kyrene Village shopping center, located at

20   the southwest corner of Chandler Boulevard and Kyrene Road, Chandler, Arizona. The

21   modifications shall occur by no later than six (6) months after entry of judgment, and shall

22   involve the removal of the following barriers to accessibility:

23               1. In front of Regal Beagle (facing north), the access aisle serving the
                 "accessible" parking spaces contains a curb ramp with a running slope of

24

25   _____

26          [7] Note: this fee amount does not include the approximate one hour incurred on the date
     of the default damages hearing, the time incurred in researching and drafting the post-hearing
27   memorandum, and attending the Court's January 5, 2011 viewing of Kyrene Villiage
     shopping center. Plaintiff's counsel may wish to file a supplemental fee application for his
28   time not included in the Report and Recommendation.

7.9%, in excess of the 2.0% maximum for accessible parking spaces and access aisles. Defendant shall demolish and remove curb ramp from access aisle, resurface and repaint asphalt underneath; renovate adjacent concrete sidewalk to provide new, "L-shaped" sidewalk ramp (proceeding east with one leg of the "L" and south with the other leg of the "L") with level landing at sidewalk adjacent to top of current west parking space, which parking space would become the new, repainted access aisle.

2. In front of Dollar Tree, the access aisle serving the "accessible" parking spaces contains a curb ramp with a running slope of 7.1%, in excess of the 2.0% maximum for accessible parking spaces and access aisles. Defendant shall demolish and remove curb ramp from access aisle, resurface and repaint asphalt underneath; renovate adjacent concrete sidewalk to provide new alley curb ramp.

3. In front of the former Basha's space, there are two "built-up" style curb ramps that extend into the vehicular traffic lane. Defendant shall saw cut at the face of the curbs the portion of the concrete ramps that extend into traffic, and resurface asphalt underneath.

4. In front of Audio Express, the sidewalk curb ramp has a running slope of 14.0%, in excess of the 8.33% maximum. In addition, the asphalt immediately adjacent to the base of the ramp has a running slope of 7.7%, in excess of the 5.0% maximum. Defendant shall demolish and remove existing steep curb ramp and replace with a new compliant alley ramp with running slope of less than 8.33%; remove existing asphalt adjacent to base of ramp and resurface with slopes less than 2.0% in all directions.

5. In front of Kyrene Lanes, all three sidewalk curb ramps are too steep: the south curb ramp has a running slope of 11.3%, in excess of the 8.33% maximum, and a side flare slope of 26.3%, in excess of the 10% maximum. The center ramp (immediately in front of the entrance) has a running slope of 9.1%. The north curb ramp has a running slope of 10.1%. Defendant shall demolish and remove existing center ramp to provide at least one accessible entrance, and replace with a compliant alley curb ramp with a running slope of less than 8.33%.

6. The "accessible" parking spaces serving the north curb ramp in front of Kyrene Lanes have running slopes in excess of the 2.0% maximum: the south space has a running slope of 7.9% and the north space has a running slope of 3.6%. Defendant shall excavate, remove, repave and re-stripe parking spaces so slopes are less than 2% in all directions.

7. The sidewalk curb ramp serving Corvette Cafe and Lounge has a running slope of 11.4%, in excess of the 8.33% maximum. Defendant demolish and remove existing steep curb ramp and replace with a new compliant alley ramp with running slope of less than 8.33%.

8. The "accessible" parking space serving Corvette Cafe and Lounge has a running slope of 6.0%, in excess of the 2.0% maximum. Defendant shall excavate, remove, repave and re-stripe parking space so slopes are less than

1      2% in all directions.

2      9. The sidewalk curb ramp serving Queens Bowl restaurant has a running slope
       of 11.0%, in excess of the 8.33% maximum. Defendant shall demolish and
3      remove existing steep curb ramp and replace with a new compliant alley ramp
       with running slope of less than 8.33%.

4
       10. The sidewalk curb ramp in front of India Gate (serving as part of the
5      "accessible" route from Chandler Boulevard) has a running slope of 10.4%, in
       excess of the 8.33% maximum. The curb ramp also has a side flare slope of
6      15.5%, in excess of the 10.0% maximum. Defendant shall demolish and
       remove existing steep curb ramp and replace with an "L-shaped" ramp with
7      compliant slopes. The bottom level landing of the "L" should run north/south,
       to be accessed from the south (from the location of the current adjacent
8      parking space, which have to be designated as an access aisle), and then
       proceed uphill and west for the length of the "L." Five feet of curbing to be
9      added in the location of the current ramp's east edge.

10     **IT IS ORDERED** that if this Report and Recommendation is approved by

11   District Judge Snow or if he otherwise directs, the Clerk is kindly directed to enter Judgment

12   consistent with this Report and Recommendation pursuant to Rule 58(a),(b)(2), Fed.R.Civ.P.

13     **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to

14   mail a copy of this Report and Recommendation to Kyrene Village II, LLC's statutory agent

15   Bruce I. Shapiro, Arizona Partners Retail Investment Group, LLC, 6621 N. Scottsdale Rd.,

16   Scottsdale, Arizona, 85250-4421.

17     This recommendation is not an order that is immediately appealable to the

18   Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules

19   of Appellate Procedure, should not be filed until entry of the District Court's judgment. The

20   parties shall have 14 days from the date of service of a copy of this recommendation within

21   which to file specific written objections with the Court. 28 U.S.C. § 636(b)(1), as amended

22   on December 1, 2010; Rules 72(b) and 6, Federal Rules of Civil Procedure, as amended on

23   December 1, 2010. Thereafter, the parties have fourteen (14) days within which to file a

24   response to the objections. Failure to file timely objections to this Magistrate Judge's Report

25   and Recommendation may result in the acceptance of the Report and Recommendation by

26   the District Judge without further review. *United States v. Reyna- Tapia*, 328 F.3d 1114,

27   1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of this

28   Magistrate Judge will be considered a waiver of a party's right to appellate review of the

findings of fact in an order or judgment entered pursuant to this Magistrate Judge's recommendations. Rule 72, Federal Rules of Civil Procedure.

Dated this 6th day of January, 2011.

Lawrence O. Anderson
United States Magistrate Judge